Case number 25-5830, Jennifer Byrum v. Knox County, TN et al. Oral argument not to exceed 15 minutes per side. Richard Collins, second for the appellant, may proceed. Good afternoon. Richard Collins for appellant Jennifer Byrum. I would like to reserve three minutes for rebuttal argument. And may it please the court, this appeal concerns whether Byrum's complaint plausibly alleges municipal liability, where jail staff recognized her father, Ricky Lewis, a detainee, was in obvious medical distress, failed to provide any medical treatment whatsoever, and allowed him to deteriorate for hours until he died of a drug overdose. And this in a jail in which county officials have acknowledged intoxicated and overdosing detainees are entering the jail in increasing numbers. And the complaint alleges, of course, that the jail publicly acknowledges that it cannot safely handle these detainees. Nevertheless, the complaint goes on to allege that the county maintains customs and training failures that essentially cause jail staff to seek to detain, or in this case actually restrain, medical distress rather than treat it. Can I ask, were you counsel below as well? I got in midway. Midway, okay. So I'm a little curious. I mean, as a complaint describes, and as you're already describing here this morning, he comes in, he doesn't, you know, he's exhibiting clear signs of whether it's overdose or withdrawal or certainly medical distress, and that continues in this 17-hour period that he's there. There are lots of people who interact with them, but none of those people are in the case. That's right. I think, I did not prepare this complaint. Those individual officers are not in the case. You're right. I don't know if it was a matter of... Isn't that a natural, you know, place to bring an inadequate care claim, a 14th Amendment claim? I mean, we, quite frankly, we see them with frequency. It kind of struck me that all those claims were just dismissed. Well, I think that, yes, there was a lot of confusion below around the capacity in which certain individual defendants were sued. Yeah. So the central question here now, though, what's a pill? Right, I understand that, but, you know, you're... You typically do see individual officers sued, not just on a supervisory basis, which is what was in this complaint, but, you know, it'd be nice to have the jail nurse, for example, Right, and I certainly hope confusion about how to sue people hasn't, you know, deprived, you know, this woman who lost her father from representation and claims that could have been meritorious. I mean, obviously, you're saying they're not before us today, but... That's right. I believe, though, of course, there's no requirement that I have in this lawsuit... The individuals, right. It's not fatal to the Monell claim. So I'll let you go on to actually what's here. It's just quite a curious posture for us. Because there was deliberate indifference in this case on even a pre-Brauner bubble. You know, we have sternum rub, recognized smelling salts. You know, the man sits here and wastes away for nine hours in an observation. So that's the kind of, you know, just shocking deliberate indifference that would have survived under any sort of, you know, analysis pre-Brauner. But here, you know, back to the Monell claim, you know, the district court, I think, required detailed proof rather than plausibility. I think the district court effectively required the complaint... Let me back up and say the district court seems to have viewed this case and the complaint in the way of Carraway or Massey, those core civic cases, where there's these generalized allegations and deficiencies pleaded, but no factual bridge to the constitutional injury. And I would submit that's just not the case here. You know, unlike those cases that lack a factual bridge between customer policy and the injury, Byram's complaint doesn't just rely on abstract allegations. She actually pleads a concrete sequence of events showing how the county's practices operated in real time to cause her father's death. And, you know, I think it's helpful, as I was preparing for this oral argument, to view this case in terms of like three constitutional inflection points, I would call them. So the first would be the intake. And turning there, you know, the complaint alleges that Lewis arrived unable to walk. Of course, he was arrested on drug possession charges, unable to walk, hunched over, and had to be transported initially in the jail on a wheelchair. And shortly after entering the jail, the nurse performs the sternum rub, which, as I say, is a technique which the complaint says is performed when an overdose is suspected. But rather than elevate treatment, rather than use Narcan or send him to the hospital or anything else, they just shoved him into an observation cell where he received no treatment and, frankly, was not observed. Now, these intake facts, how he presents in the jail and how this nurse is handling him, I think they're important because they support at least two Monell theories that we rely on. First, failure to train. Because, you know, the complaint alleges that they recognized an overdose, medical distress, but they failed to do anything about it. And, you know, the district court seems to have faulted the plaintiff for not including allegations around other incidents, prior incidents, or getting into the nuances of what training was provided, all this very specific allegations around training. But, you know, that is one way of establishing failure to train. Although, I mean, we have many cases where arguably there is a constitutional violation, maybe like excessive force, for example. But every time we have an officer excessive force claim, even if we think the officer uses excessive force, we don't say, well, there must have been a failure to train, and you automatically also have plausibility under a Monell theory, right? So are you relying on the fact that it's, you know, more than one officer here? That it's over, you know, is it the inference from so many staff members over the course of the day? Because at least it strikes me it has to be kind of more than, like to build a reasonable inference of failure to train has to be more than, you know, one person, you know, one individual person doing something that doesn't comport. What we have is multiple actors, multiple officers responding in the exact same way. So I think that that does supply an inference of failure to train. But, you know, here what we really have is a situation where the need for training is just so obvious and the risk of constitutional injury so high and predictable. In this particular area of opioid detoxing and overdosing inmates. And that's really what, you know, the complaint spends an awful lot of time and effort on proving that up, this idea that the county is aware that this is going on and not doing anything about it. But those facts actually, you know, they supply a lot of good background. I'm not up here relying solely on some overcrowding theory or underfunding theory. But they do supply the factual background here as to why the training was so deficient. And, of course, we have the recognition of serious medical distress in the same response. It's not just the nurse. It's the next officer over and over and over. The second Monell theory that I think the intake facts support is this, what we've described in the complaint, paragraph 57, is the sleep it off custom. Now this is like an affirmative custom. It's not just acquiescence, which I think the complaint also embraces, but this is an affirmative custom of essentially containing or not responding to and just allowing inmates to sleep it off as opposed to providing any sort of medical care. And those intake facts support, they show that that particular Monell theory has some teeth to it, that what we allege is actually occurring in this jail. The second constitutional inflection point, I might call it, is- Can you actually stick with your sleep it off custom for a second? Although maybe you were trying to do other inflection points for that. So I'm sorry if I cut you off. But we're often looking in these cases for a pattern in practice in more than one case, right? Or we're looking for some other evidence that this is on the books or that a higher up, a decision maker has said to do this or bless this or things like that. How do you- What in the complaint here shows us that this is really a custom besides for this just happening to the deceased in this case? Sure. Well, I do want to caution that we are still in the pleading stage. This is not the proof stage. It's one. But if you look at the complaint in paragraph 57 in particular, we do call it an established custom. There's that. But the facts in the complaint around what the Tennessee Correctional Institute requires in form of minimum screening when an inmate comes in and how this just isn't done. So, I mean, what we're alleging here is clearly a routine. Now, can we prove it? You know, I think probably, but maybe not. I mean, maybe once we get in and discover, we find that this was just that one moment where they let him sleep it off as opposed to actually getting medical treatment. But I think if you look at the complaint as a whole, the sheriff's public comments, the fact that Tennessee law requires these medical screens, you've got to screen these folks to see if you can even safely keep them in the jail. And they're not doing that. Before doing this complaint, did you look to see if the jail had been sued on these grounds in other cases? Again, I did not. You weren't prepared. That's right. But they have been. Right. And that will come out later. But, you know, this is, again, pleading. I think some of that complaint reads more like a jury argument, especially when it comes into the underfunding and all this. But that doesn't take away from the fact that at the end of the day, the dots are still connected sufficiently for Monell liability, under Iqbal, Twombly, and Rule 8. And, you know, we have courts across the circuit saying, you don't even have to identify the specific policy or custom at play at this stage. You know, but here we have a court saying, not only do you have to identify it, you've got to basically demonstrate it and remove all doubt. And that's improper. And so we ask that this panel reverse and remain. And thank you. Great. Thank you. Good afternoon, Your Honors. May it please the Court, Federico Flores for Knox County. Your Honors, I would start off with the sleep it off policy that my counterpart referenced. The complaint expressly states that the sleep it off, that this is a custom. It is a custom, Your Honors, that is on paragraph 57, R89 of the amended complaint. By definition of a custom, you have to have a past incident or a series of incidents to establish that this is a custom. There is no such thing as a single violation custom. And that's important because the complaint does not allege any non-conclusory past incidences. Could we begin with the pleading standard? Yes, Your Honor. I have some concerns about this case and, frankly, about others in light of notice pleading requirements and how a case that is being reviewed under a motion to dismiss must be reviewed. There's much talk in the briefing about a heightened pleading standard in this kind of case. I would like to know if you have a case that specifically says that because I'm looking at Lott in the Western District of Tennessee where it talks about complaints under 1983 are not subject to a heightened pleading standard. And we know in Monell failure to train claims that under the law, I'm not aware of any rule that requires a heightened pleading standard there. Do you have case law that is at odds with the Lott case? I believe Lott is at odds with the Sixth Circuit and Supreme Court precedent, Your Honor. The pleading standard is an Iqbal, that a complaint must set forth plausible factual allegations to support its conclusions. That is the pleading standard. There is no heightened pleading standard. Iqbal is the pleading standard. Lott and other cases that are cited by Ms. Byram speak to not having to specifically identify a policy. That is different than having to plead facts to support your allegations. And that is particularly important in a Monell claim, Your Honor, because there is no respondent superior in a Monell claim. So it is not enough to say that officers mistreated Ricky Lewis and that officers left Ricky Lewis in a holding cell and that nurses didn't provide the treatment that he should have been provided and then say, and that's because of a policy. You have to connect the two. My problem is that in your briefing arguments, you cite us to the Supreme Court's language in Connick that it looks to how we are to evaluate here. Your argument is that a municipality's culpability for deprivation of rights is at its most tenuous where a claim turns on a failure to train. But that case and that statement was made at the merits stage, not at the motion to dismiss stage. And my concern is I'm seeing that conflation somewhat routinely. I'm seeing in the argument of the briefing that here and, frankly, in other cases, that the plaintiff has failed to show that this is the end result. The plaintiff has showed to provide evidence of this. And at the motion to dismiss stage, that is really a summary judgment standard, and I'm concerned that here we are getting off course. What I looked to in this case was to see where we have looked under the notice pleading standards, under those requirements in our circuit. And I'm looking at Helfenstein from 2023 that says, it appears that defendants were not trained on how to identify or address a medical emergency. The jury could easily conclude that this training program to the extent it existed was insufficient. And so this is not saying you have to prove in the complaint that it existed. You have to allege with plausibility that it existed. So I'm struggling. Tell me your best cases for why the facts throughout the complaint, because this complaint carefully adopts every previous count's factual allegations all the way to the failure to train complaint. So wouldn't your notice pleading rule have to look at all of the complaint factual allegations when it's looking at each of the legal claims? The cases I would point the court to would be this court's prior decision in Carraway v. Core Civic, Massey v. Core Civic, Williams v. Core Civic, and Lawrence v. Core Civic. All four of those cases, and Carraway was the only reported one, Your Honor. The other three followed. All three of those cases discuss causation and facts, facts that tie the policy to the alleged harm, non-conclusory facts. So here I'm with you about plausibility and Iqbal controlling. I'm curious how the actual facts, the non-conclusory facts here, map onto a plausible inference about failure to train. Because I heard your friend on the other side say, listen, this isn't one person who didn't identify that somebody was in distress or that somebody was in overdose or that somebody was in withdrawal. This wasn't one person. It was the nurse. It was the deputy. It was all these other people who was here for 17 hours and never really got any sort of emergent treatment. And isn't it plausible then, because it wasn't just a mistake of one person, two person, three person, that there's actually a real deficiency in the training? I don't believe so, Your Honor, because there are no facts in the complaint that discuss what the training program entails. But how can you have that information without discovery? I mean, we're looking for reasonable inferences and plausibility, right? I mean, they have to do public records to get your training program before they can file a complaint. Is that your argument? A public records request is an option available to litigants and it is something that is not uncommon to see, Your Honor. Because there is no respondent superior in a Monell claim, it does require extra work. It is not enough to say that because in this one incident, and that is all under the pleaded facts, this has never happened before. The plaintiff has not cited any facts to show this court that this has ever happened before. I take that as a part of something we really look to in our customs jurisprudence under Monell. But under our failure to train jurisprudence, we certainly have said things that are so obvious that you have to train on. You can have a single incident. That's pretty clear in our case law. Yes, Your Honor. I think you would agree that, especially given the public statements about the opioid crisis and everything going on, that this is something that is pretty obvious, should get trained on what to do when people are coming in on an overdose. I would disagree. Because the public statements do not speak to the issue. All right, so take away the public statements. Do you think that dealing with intoxicated, overdosing detainees, people coming in on drugs and going through withdrawal is something that is obvious that the jail should have to train on? I don't believe so, Your Honor, unless it's clearly established law. Counsel, you have a policy requiring that someone check on detainees every 15 to 30 minutes, correct? For this very problem, right? That there could be a medical emergency occurring. And I don't think you're going to get very far respectfully contesting that the risk of opioid overdose in a holding cell is not a material one. So can you address Judge Blomkamp's question about why isn't it because the number of jailers and employees that were involved, why doesn't that kind of in like a race ipsa type way support a failure to train claim? Because it requires a policymaker to be deliberately indifferent. And there are no allegations in the complaint. If the training is inadequate on one of these issues that we think it's obvious that you need training on, then the deliberate indifference flows from the fact that the county does not train on this critical issue. That's where it comes from. You know that there's a danger from not training people on how to deal with an overdose. So not to train any of these people on how to identify it, how to treat it, how to make sure somebody doesn't die in their first 17 hours in your doors. That's where the inference comes from and that's how the failure to train connects with deliberate indifference. But there have to be non-conclusory facts and in this case there are no non-conclusory facts. Well, did they allege John Doe's here? I mean, we have the video, right? And so we can see, or at least it's alleged in the complaint, right, that someone comes in at this time and drops some food. Somebody comes in. I mean, it's a very sad case, right? He's writhing in feces for several hours. Someone comes in. Do they give him any medical attention? No, they wash him off and they put him back, right? So there are lots of people in factual allegations of what actually happens, right? John Doe number one does this. John Doe number two does this. They don't know the names, true, but they have different, I think there are at least eight John Doe's. So that's not conclusory. Those are factual allegations. Correct, Your Honor. But do they go to a custom having caused this? And that is the question. Well, try my question, which is, does it raise a plausible inference that they're not getting adequate training? No, I do not believe it does, Your Honor. I do not believe it does. And why isn't that a reasonable inference? Because I go back to past incidences. And the language in Connick is, at its most tenuous language, is because in a failure to train case, it is just as possible that it is a bad officer and not a policy of failure to train. But that was a merits. Once again, we're back at the problem of that's a different standard. That was at the merits. And in Helfenstein . . . Helfenstein is summary judgment. Yes. It is summary judgment, but it does state to the law itself. It sets up the standards there. And the law itself that it describes, it does not require a pattern of prior incidents. What it says is the single violation, the death, was accompanied by the county's failure to train the jailers to handle this potentially recurring situation. That's the law. And I guess I'm struggling. I know you cited Carraway as one of the best examples, but there's an important factual distinction. Here we are talking about the training that would comply with Judge Hermendorfer's question about oversight, medical review, and checking on somebody. And in Carraway, it was not a new person. It was an incarcerated prisoner that guards found or was reported to them had experienced a drug event. And in that situation, those officers who found Carraway immediately undertook medical surveillance. They didn't wait 38 minutes after they thought he may be dying. They immediately called for medical assistance right there. It seems to me that that supports the viability of a single violation event in this case. Why doesn't Carraway make that a plausible allegation? The principle of Carraway is causation. And causation is something you do have to allege and plausibly allege at the pleading stage. What is similar between Carraway and this matter is the court's analysis of causation. Well, so the causation, the complaint, here we have Carraway, the one event thing, when they immediately reacted, compared to the allegations in this complaint that there was no treatment given, there was no naloxone, there was no medical evaluation, 9-1-1 was not called, so no immediate action for over 17 hours after obvious symptoms showed up. And Carraway's lesson is that as soon as they found this guy and they thought that he was overdosed, they immediately acted. I'm lost as to why that's not a statement of the law that can apply to a single-violation failure to train. I don't believe that this is a single-violation failure to train scenario. Single violations are extremely rare. Giving an officer a gun and not training him on how to use it, and then he goes out and shoots someone, that I'll admit is a single violation, a plausible single violation claim. Here, we don't have any facts about what the training program was. We don't have any facts about... Isn't that proof? I'm struggling with back to where we are. You may win. I think your opposing counsel even conceded that. You may win at trial. You may win even at summary judgment. But we are in a motion to dismiss, and this is not a three-page complaint. It makes multiple allegations factually direct in this issue. I'm struggling with why that doesn't state a claim that is merely plausible, because that's all that's required. Because the factual allegations are all conclusory, Your Honor. Okay. I think we have counsel's argument, unless there are any further questions. Judge Hermendorfer, Judge Strange. Great. Thank you.  We'll allow for rebuttal. Counsel, I believe you reserved three minutes. Yes, Your Honor. I think whether we frame this case as failure to train or that affirmative practice of sleeping it off or some acquiescence type of theory, at the end of the day what we have is a system that is causing, that's working this injury. It's all about Knox County's practices that led to Ricky Lewis's death. Now, on plausibility, here, and this is to your question to my friend, Judge Blupkatz, around what are the plausible facts here. I go back to this. We have the same response, just different people, different time. It's not just a one-off nurse or correctional officer. It's the same deficient response continuing through to the final stage of Lewis's deterioration and death. Counsel, we often have cases in which there are multiple officers supervising a detainee. My concern is that because of the way this case was litigated in terms of individual defendants dropping out, you're pursuing a theory that would turn pretty much any deliberate indifference case with bad facts into a per se, monel violation on a failure to train theory, just on the view that, oh, these facts are so bad, there must have been a lack of training. Why isn't that a real concern? I think it would be if that's what I was arguing, but I'm not. And the complaint does not say, oh, it's really bad, it must be a result of failure to train. On that failure to train claim, if that's how we want to frame it for now, I go back to the same response over a sustained period of time. You know, for nine hours he's in a holding cell, and we don't have the same officer coming and ignoring. It's different officers. It's the same deficient response every single time, from intake, my first inflection point, to the holding cell, my second, to then finally a third where we're restraining an inmate in medical distress, restraining rather than treating. That has to result from something, there's a moving force for that. And it has to be, the only reasonable inference there, is that this comes from the county's customs or policies. Now, which one, is it failure to train, is it my acquiescence theory, is it the affirmative sleep it off policy, I don't know. But what we do have are these specific facts, time-linked, over an extended period of time, that all point in that direction. Thank you. May I set you reverse in remand. Thank you. Thank you to all of our council today. All of our cases today will be submitted, and we appreciate your arguments and your briefing. And court can be adjourned.